UNITED STATES DISTRICT COURT　　　　　　　ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
AUBREY ABBENSETTS,

                  Plaintiff,　　　　　　　MEMORANDUM AND ORDER

      -against-　　　　　　　　　　　　　　10-CV-2128 (JG)

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
---------------------------------------------------------------x
A P P E A R A N C E S:

    SPENCER STEELE
        37 Fairhaven Boulevard
        Woodbury, NY 11797-1622
        *Attorney for Plaintiff*\*

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:   Kathleen A. Mahoney
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Aubrey Abbensetts seeks review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner of Social Security's denial of his applications for disability benefits. The Commissioner has moved for judgment on the pleadings, and I heard oral argument on October 22, 2010. Because the Commissioner's decision is supported by substantial evidence in the record, I grant his motion.

        This action arises from a 15-year-long series of applications for Title 16 disability benefits. Abbensetts's first application was filed on December 13, 1995, and denied on

---

    \*    The case was filed *pro se*, albeit with the assistance of Mr. Steele. Mr. Steele appeared at oral argument (as did the plaintiff) and, with the plaintiff's permission, was allowed to enter an appearance and argue on Mr. Abbensetts's behalf.

September 26, 1996 (the "1995 claim"). He filed three subsequent claims, on March 28, 1997 (the "1997 claim"), November 16, 1999 (the "1999 claim"), and January 9, 2006 (the "2006 claim"), all of which are consolidated in this action.[1]

Abbensetts's application came before this Court on December 18, 2007, when he sought review of an adverse decision by the Commissioner after a hearing before Administrative Law Judge ("ALJ") Martin Kahn. I remanded the case to the Commissioner for reconsideration on June 18, 2008. The order remanding the application (the "remand order") set forth instructions for the proceedings on remand. Subsequent to the remand, the Appeals Council provided further instructions to the ALJ who would next hear the case, setting out the specific steps necessary to remedy the legal deficiencies in ALJ Kahn's opinion. ALJ Hazel Strauss held a hearing (the "Strauss hearing") on August 9, 2009, and found that Abbensetts was not disabled. Familiarity with events that took place and facts that were established prior to the 2008 remand is assumed.

## BACKGROUND

A. *The Plaintiff's Statements and Testimony*

Abbensetts's testimony in the Strauss hearing was substantially similar to the testimony he gave in previous ALJ hearings. He testified to spending much of his day reading, watching television, and attending meetings of Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA"). (R. 1007.) He stated that "reading seems to be very frustrating because I have to like rest my back and seems like it's very difficult to concentrate with a lot of pain." (*Id.*) He testified to being able to cook and clean (including sweeping and mopping), as well as

---

[1] The 1995, 1997 and 1999 claims were consolidated, adjudicated, and remanded by Judge Frederic Block in an opinion issued on September 19, 2002. *Abbensetts v. Barnhart*, No. 01-CV-6596, 2002 WL 31095011, (E.D.N.Y. Sept. 19, 2002). Judge Block's opinion included a set of instructions for the Commissioner to comply with on remand. *Id.* at *5.

2

go shopping, albeit all with pain. (R. 1008-09.) He also manages his own money and personal hygiene. (R. 1013.)

As with previous ALJ hearings and medical appointments, Abbensetts testified to having taken public transportation to the Strauss hearing. (R. 988.) He also testified to taking public transportation to meetings of AA and NA. The meetings occurred "once a week, sometimes twice a week" (R. 1008), and most lasted "an hour, some an hour and a half." (R. 1007.) He also testified to a visit to his family in Atlanta, for which he flew a total of approximately six hours over the course of a weekend. (R. 1011.)

Abbensetts then testified to his subjective physical limitations. He sleeps on a mat because a mattress hurts his back, and he has trouble rising from the floor after sleeping; "it hurts even to lay down because . . . my spine . . . sags." (R. 1021.) He stated that he could walk approximately four blocks at a time, and then had to rest because his lower back "burns." (R. 1013.) He stated that standing up was more comfortable than sitting down, but that he could only stand for approximately 20 minutes before having to sit. He could sit for approximately a half-hour. (R. 1014.) He could lift "maybe ten pounds, maybe less." (R. 1015.)

B. *Medical Evidence*

Dr. Edward Spindell, the medical expert at the Strauss hearing, was the only medical expert to have seen the entire medical record as supplemented by ALJ Strauss in compliance with the remand order. He diagnosed Abbensetts with long-standing thoracic and lumbar scoliosis dating back to 1995 or earlier. Because the scoliosis was in two opposing locations, the spine was "reasonably well balanced." (R. 1030.) Spindell reviewed all of the x-ray and MRI films available in the record and determined that there had been "some degenerative changes" in Abbensetts's condition. (R. 1040-41.) He specifically mentioned that,

3

since 2002, the films show disc herniation and various other changes. However, he "[did] not find any neurological changes." (R. 1041.)

With regard to Abbensetts's pain and his exertional limitations, Dr. Spindell based his testimony in part on the opinions of Drs. Chris Overby and Yinggang Zheng. Dr. Overby examined Abbensetts in 2003, and reported a history of ten years of pain. Although the pain seemed to be progressing, Overby did not find any neurological abnormality or radiation to other areas of the body. (R. 1040-41.) Dr. Zheng examined Abbensetts on June 13, 2009, and found "the patient can walk . . . four blocks. . . . [H]e can do laundry, shopping, cooking, and activities of daily living. . . . He has normal gait and he has normal motor strength and a negative neurological examination." (R. 1031; *see* Zheng Report, R. 955.)

In balancing the Overby and Zheng reports against several others that provided more limited descriptions of Abbensetts's capabilities, Dr. Spindell looked for objective evidence of a medical condition that would give rise to the physical limitations and pain claimed by Abbensetts. Spindell observed that, although "many many people [have] scoliosis[,]. . . . [It] usually does not produce this degree of impairment . . . [without] some profound neurological deficit." (R. 1045.) Concluding from the Overby and Zheng reports a diagnosis of a "negative neuro examination except for the scoliosis" (R. 1042), and finding no evidence in the record of a neurological deficit, Spindell determined that Abbensetts could lift and carry 20 pounds occasionally and ten pounds frequently, sit for six of eight hours, and stand and walk for six of eight hours at will. (R. 1056.)

C. *Vocational Evidence*

The vocational expert, Julie Andrews, was asked to opine on the vocational capabilities of a hypothetical individual with Abbensetts's characteristics. The ALJ presented

both a hypothetical individual with exertional and nonexertional limitations described by Dr. Spindell, and a hypothetical individual with the exertional and nonexertional limitations alleged by Abbensetts.[2] (R. 836-37.) In both cases, Andrews found that there existed jobs in the national economy that Abbensetts could perform. (R. 837.) The critical factor in the determination that Abbensetts retains the ability to work seems not to have been his contested exertional limitations, but rather his uncontested ability to perform gross and fine manipulations with his hands. (R. 1068-72.)

## DISCUSSION

To be found eligible for disability benefits, Abbensetts must show that, "by reason of any medically determined physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* § 423(d)(2)(A).[3]

Abbensetts's eligibility for benefits has been evaluated several times according to the above standard. In each of the last three evaluations the District Court and the Appeals Council have found legal deficits in the Commissioner's decision-making process, and have remanded the case to the Commissioner with specific instructions on how to remedy those deficits. The opinion of ALJ Strauss, which gave rise to the final decision of the Commissioner

---

2   Specifically, the ALJ provided "one last hypothetical and this is based on the claimant's testimony. Assume the individual can do a range of sedentary work. He can walk four blocks at a time. He can stand 20 minutes at a time and sit one half hour at a time. He can sit a total of six out of eight hours and stand and walk a total of six out of eight hours. And he can . . . lift ten pounds and carry ten pounds." (R. 1062.)

3   Work may be substantial even if it is not full-time or if it generates less income or carries less responsibility than previous employment. 20 C.F.R. § 404.1572. Work is gainful "if it is the kind of work usually done for pay or profit, whether or not profit is realized." *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id.*

on review in this case, is thus evaluated here not only to determine whether it is supported by substantial evidence, but also to determine whether the ALJ adequately responded to the Court's and the Council's concerns and cured the outstanding legal deficits.

A. *Instructions on Remand*

On remand from this Court, ALJ Strauss was responsible for complying with three sets of instructions: the remand order, the Appeals Council's supplementary order, and an opinion by Judge Block. In 2002, Judge Block remanded Abbensetts's consolidated 1995, 1997, and 1999 cases with instructions to "present . . . the testimony of a vocational expert," "clarify Dr. Gray's opinion that Abbensetts can lift 'less than 20 pounds,'" and "consider Dr. Haldea's . . . evaluation." (R. 625.) After Judge Block's remand to the Commissioner, ALJ Kahn conducted a new hearing and issued a new opinion, but failed to adequately address Judge Block's concerns.

In 2008, when Abbensetts's case came before this Court, the parties stipulated to another remand. The remand order directed the Commissioner to conduct "further administrative proceedings on plaintiff's claims for Supplemental Security Income filed on December 13, 1995, March 28, 1997, and November 16, 1999, including but not limited to further development of the record regarding an evaluation of plaintiff's alleged mental impairments(s), an[d] the issuance of a new decision." *Abbensetts v. Comm'r of Social Sec.*, 07-cv-05287, docket no. 22.

Expanding on the remand order, the Appeals Council issued an order of its own, requiring the ALJ to

> specifically address the severity [o]f the claimant's impairments with regard to Step 2 of the sequential evaluation process; (2) re-consider whether any of the claimant's severe impairments meet or equal any of the listed impairments; (3) re-evaluate the claimant's residual functional capacity in light of the medical

> evidence, including treating source opinions; (4) provide a rationale as to the weight accorded to each in accordance with the regulations and re-contact the medical sources to resolve any apparent discrepancies; and (5) offer the claimant an opportunity for a new hearing, take any action needed to complete the record, and issue a new decision.

(R. 819 (citation omitted); *see* R. 846.)

B.   *The ALJ Complied with the Court's Instructions*

In a thorough and carefully reasoned opinion, the ALJ responded to the Court's concerns, as well as those of the Appeals Council and Judge Block. She properly applied the law to the facts and correctly concluded that Abbensetts is not disabled.

1.   *The Remand Order*

Specifically addressing the mental health issue as required by this Court's remand order, ALJ Strauss obtained psychiatric evaluation reports from the New York Office of Mental Health and Dr. Lauree Mitchell, as well as a psychosocial assessment by the Long Island Consultation Center. (R. 830-31.) Based on those reports and the testimony of the medical expert,[4] she determined that Abbensetts's mental health problems do not constitute a severe impairment. (R. 822.) ALJ Strauss nevertheless then went on to perform a full mental disability analysis, as required by the remand order. She went through each of the four prongs of the special inquiry required by 20 C.F.R. § 416.920a, finding that Abbensetts had no limitation in the activities of daily living, mild limitation in social functioning, and mild limitation in concentration, persistence or pace. (R. 823.) She further found that Abbensetts had experienced no episodes of decompensation. (R. 824.) She thus determined that Abbensetts did not suffer from a severe mental disability that met the statutory requirements for claiming benefits. (*Id.*)

---

[4]   The Court has considered the supplemental documentation submitted by Abbensetts after the oral argument. This additional information, although not in ALJ Strauss's record, comports with the evidence ALJ Strauss had available to her and does not warrant a remand for reconsideration.

2.  *The Appeals Council Order*

The ALJ also complied with the Appeals Council's expansion of the remand order. First, she concluded that Abbensetts's thoraco-lumbar scoliosis and degenerative disc disease were severe and "limit the claimant's ability to perform basic work activities," but that his mental health complaints were not. (R. 822.)

Second, ALJ Strauss discussed in detail whether Abbensetts's severe conditions rose to the level of a listed impairment in 20 CFR 404, Subpart P, Appendix A. She observed that "no treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairments." (R. 822.) She noted that "[t]he medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment severe enough to meet the criteria of any listed impairment." (*Id.*) She concluded that Abbensetts's medical conditions, severe as they were, did not meet or medically equal any of the listed impairments for claiming benefits. *See* 20 C.F.R. §§ 404.1525, 404.1526.

In response to point three, ALJ Strauss evaluated the reports of each medical professional in the record, whether treating physician, examining source, or non-examining source, in order to determine Abbensetts's residual functional capacity. (R. 825-31.) She sent Abbensetts to Dr. Zheng for a full physical workup and residual functional capacity questionnaire (R. 955, 958), and to Dr. Mitchell for a psychological evaluation (R. 965). She also obtained the testimony of Dr. Spindell, an independent medical expert (R. 1022). Spindell, based on the medical evidence in the record, including the treating sources, provided an assessment of Abbensetts's residual functional capacity as discussed above. ALJ Strauss also evaluated the opinions of Abbensetts's treating physicians, as discussed below, and drew

conclusions from those physicians' reports. This was adequate to satisfy the instructions of the Appeals Council.[5]

With regard to point four, ALJ Strauss discussed in detail the appropriate weight to give the opinions of each medical professional on record, as required by the Appeals Council. She gave significant weight to Dr. Spindell, the medical expert who testified at the hearing at which Strauss presided, because he had seen the medical record as a whole and because his testimony was consistent with the weight of that record. (R. 832, 834.) She also gave significant weight to Dr. Callaghan, Abbensetts's treating physician in 1995 and 1996, who provided a detailed medical source statement for the 1996 hearing (R. 833); and Dr. Tallapragada, who indicated only slight or no exertional limitations (*id.*). She gave moderate weight to Dr. Yin, a treating physician from approximately 2005 to 2007, insofar as Yin's report comported with the record. (*Id.*)

ALJ Strauss gave minimal weight to Dr. Haldea's opinion because it was "inconsistent with the record as a whole and [was] contradicted by the medical evidence, in terms of the general lack of significant positive clinical findings on examination despite diagnostic test results demonstrating scoliosis and, later, disc disease." (R. 832.) She gave little weight to the opinion of Dr. Gray, because she found that he "clearly" based his opinions on the subjective symptoms reported by Abbensetts, rather than on his own physical examinations and

---

5      Ordinarily, in a determination of residual functional capacity, where (as here) a claimant's alleged restrictions outstrip what can be supported by the objective medical evidence, the ALJ is entitled to make a credibility determination. However, in this case, the Appeals Council specifically ordered the ALJ to make her residual functional capacity decision based on the medical evidence. (R. 819.) In the interests of completeness, ALJ Strauss indicated an adverse credibility finding. (R. 832.) This adverse credibility finding is supported by the record. For example, in various hearings and medical examinations, Abbensetts gave several different, mutually-exclusive reasons as to why he stopped working (*compare, e.g.*, R. 203 (his back began to bother him), *with* R. 345 ("I . . . had some personal problems, and I told them I had a health problem"), *and with* R. 346 (he was fired for not having his identification)); in one medical examination where he manifested a reduced spinal range of motion, he nevertheless "exhibited a full range of motion when distracted" (R. 832); and he repeatedly refused to cooperate with treatment (*see, e.g.*, R. 250, 295, 602).

9

treatment of the plaintiff. (R. 833-34; *see* Gray Report, R. 314, 316 ("Patient claims to have back pain after sitting for ½ hours. No objective support for same.").) She also gave minimal weight to Drs. Weissman and Hahn, as their opinions did not include any medical findings but "represent[ed] a conclusion of law on the ultimate issue of disability" (R. 834.), and Dr. Zheng, because her opinion did not comport with the examination findings in her report (*id.*).

ALJ Strauss satisfied the remainder of the Appeals Council's fourth point by serving subpoenas upon each of Abbensetts's treating physicians who provided opinions that contradicted those of the medical experts who had concluded that Abbensetts was not disabled.[6] (R. 892-895.) The subpoenas were returned unanswered, and no new information was added to the record. (R. 896-911.) In the same vein, ALJ Strauss also permitted substantial supplementing of the record with regard to Abbensetts's mental health, and fully developed and analyzed the record on this point even though Abbensetts's mental health difficulties had never been deemed to constitute a severe impairment. (*See* R. 830-31, 834-35.)

Regarding point five, the hearing ALJ Strauss provided Abbensetts on August 9, 2009 was adequate and was based on a fully-developed record. As discussed above, ALJ Strauss procured several reports from doctors and other health services providers in order to supplement and update the record, and her opinion reveals that she relied on the new information as well as the record created over the 15 years in which Abbensetts's case has been ongoing.

3. *Judge Block's Order*

Finally, the ALJ complied with Judge Block's instructions. She heard testimony from Andrews, the vocational expert, and specifically requested Andrews to opine on both the

---

6 Subpoenas were served on the HIP Queens Mental Health Service (R. 892), Dr. Yin (R. 893), Dr. Gray (R. 894), and Dr. Haldea (R. 895). Yin had described Abbensetts as "neurologically disabled" (R. 457); Gray had issued an incomplete opinion that needed to be finished (R. 314-16); and Haldea had placed limits on Abbensetts's residual functional capacity that were far more stringent than those described by the state physicians (R. 753).

10

Commissioner's version of Abbensetts's limitations and on Abbensetts's own claimed limitations. (R. 1058, 1060, 1062.) She requested an evaluation from Dr. Spindell of the amount of weight Abbensetts could lift, an issue first raised by Dr. Gray's incomplete physical evaluation. (R. 1046.) And she discussed with Spindell the June 21, 2002 assessment drawn up by Dr. Haldea. (R. 1044-45; *see* Haldea Report, R. 753.)

## CONCLUSION

The ALJ fully developed and analyzed the record in accordance with the instructions from the Appeals Council and the District Court. As a result, I conclude that the Commissioner's adverse decision is supported by substantial evidence in the record, and the Commissioner's motion for judgment on the pleadings is therefore granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: November 4, 2010
      Brooklyn, New York

11